Argued and submitted January 3, remanded with instructions; otherwise affirmed
May 1, 2002

In the Matter of the Marriage of

Donna L. THOMAS,
*Appellant,*

*and*

Larry R. THOMAS,
*Respondent.*

9606-66962; A111019

45 P3d 954

Tim Quenelle argued the cause and filed the briefs for appellant.

Thomas A. Bittner argued the cause for respondent. With him on the brief was Schulte, Anderson, Downes, Aronson & Bittner, P.C.

Before Landau, Presiding Judge, and Deits, Chief Judge, and Schuman, Judge.

DEITS, C. J.

## DEITS, C. J.

Wife appeals from a trial court judgment modifying a dissolution judgment by reducing husband's spousal support obligation. On *de novo* review, we modify the spousal support award.

The parties were married for 23 years. They have three children: 21-year-old twins and a 22-year-old daughter, all of whom were attending college at the time of the modification hearing. Wife, who was 50 years old at the time of the modification hearing, is a dietician. Husband, who was 54 years old at the time of the hearing, is an ear, nose, and throat doctor. The parties' dissolution judgment was entered in September 1997. Wife was awarded spousal support of $6,000 per month for a period of 26 months—through November 1999—and $4,000 per month for an additional 84 months, for a total of about nine years. The step-down in spousal support coincided with husband's obligation under the dissolution judgment to pay for the children's college expenses. The spousal support award was based on husband's annual income at the time of the dissolution of $288,000 and wife's income at that time of $33,600. The dissolution court stated that wife's income could possibly increase to $40,000 if wife increased her work hours to full time. Wife's income in 1999 was approximately $35,000 per year, and she was working close to full time.

The subject of this appeal, husband's request to modify his spousal support obligation from December 1, 1999 to November 1, 2006, was heard by the trial court in May 2000.[1] Husband based this request on the reduction of his annual

[1] This is the third time father has requested modification of spousal support. In October 1998, the parties stipulated to a modification of spousal support. Husband's obligation to pay $6,000 per month through November 1999 was reduced to $5,280 per month, based on a decrease in husband's income to $253,882 in 1997. The parties also agreed to a formula to establish husband's spousal support obligation from January through November 1999. The parties at that time did not change the $4,000 per month obligation from December 1999 through November 2006. When husband later sought to reduce his spousal support obligation for that time period based on the formula agreed upon by the parties—because of a further reduction in his income to $229,330—the parties could not agree on an amount. In July 1999, the trial court granted husband's request to reduce his spousal support obligation through November 1999 to $4,778 per month.

income to approximately $204,000 and an increase in the educational expenses for the children. The trial court found that there was a substantial and unanticipated change in circumstances based on husband's decreased income and the greater-than-expected educational expenses for which he was responsible. The court reduced husband's support obligation, effective June 1, 2000, to $2,000 per month. The November 1, 2006, termination date for the spousal support obligation remained unchanged.

Wife appeals, assigning error to the trial court's decision to modify husband's support obligation. She first argues that husband did not establish that a substantial and unanticipated change of his economic circumstances had occurred. She argues alternatively that, even if husband did establish a change of circumstances, the amount of the reduction in spousal support was not justified.

An award of spousal support may be modified based on a finding of a substantial unanticipated change in economic circumstances since the time of an earlier award.[2] *Tomos and Tomos*, 165 Or App 82, 87, 995 P2d 576 (2000); *Maier and Maier*, 137 Or App 15, 18, 902 P2d 1214 (1995), *rev den* 322 Or 644 (1996). The burden of establishing the change in circumstances is on the party requesting the change—in this case, husband. *Maier*, 137 Or App at 18. In determining whether a modification in spousal support is appropriate, we consider the purposes of the original support award. When the evidence does not provide specific information on the purpose of the original support award, we presume that the award was based on the disparity of the parties' income and that the amount of support awarded "presumptively reflects the most equitable distribution of income between the parties." *Bates and Bates*, 303 Or 40, 47, 733 P2d 1363 (1987); *Cowden and Cowden*, 172 Or App 343, 350-51, 18 P3d 479 (2001); *Bock and Bock*, 171 Or App 458, 15 P3d 609 (2000). Here, there is no direct evidence of the purpose of the award.

---

[2] The parties do not dispute that the earlier modifications of the spousal support award concerned only the time period from November 1998 through November 1999 and had no effect on the monthly award from December 1999 to December 2006. Consequently, in considering whether there has been an unanticipated and substantial change of circumstances, the starting point for our consideration is the circumstances at the time of the original dissolution judgment.

Accordingly, our task in considering modification of the spousal support award is to maintain the relative position of the parties in light of any changed circumstances. *Bock*, 171 Or App at 463.

■ ■ Wife does not dispute that husband's income decreased to $204,000 in 1999. She contends, however, that husband's earning capacity is greater than that and that the reduction in husband's income for 1999 was due in large part to his voluntary actions. Specifically, wife points out that husband took 45 days off work in 1999, which is an increase from the two to three weeks that he typically was away from work in previous years. Wife contends that, had husband worked his usual amount during 1999, his income would not have decreased.

It appears from the record that wife is correct that husband did take more time off than usual and that his doing so likely had some effect on his income. Further, the evidence shows that the additional time off was spent on events in husband's life that are not likely to occur every year. He spent 14 days caring for his elderly parents and a number of days accompanying his children on visits to college campuses. Consequently, we agree with wife that husband's income for 1999 probably is not a completely accurate indication of husband's earning capacity.

On the other hand, husband demonstrated that a number of changes in the medical field have occurred in the last few years that have caused a reduction in his income. The evidence presented by husband shows that changes in managed care have resulted in a reduction in the amount that husband is paid for various medical procedures. In addition, limitations on referrals resulting from changes in managed care have also had a negative effect on husband's earnings. There was also evidence that the bankruptcy of Health First, an association of physicians that accounted for over 50 percent of husband's referrals, has had a negative effect on husband's earning capacity.

Based on the evidence presented, we conclude that there has been a substantial and unanticipated reduction in husband's income and earning capacity since the original dissolution judgment. However, we are not convinced that all of

the reduction in husband's income for 1999 was due to the above-described changes in the medical field. We find that husband's 1998 earnings of $229,000 best represent husband's earning capacity at the time of the modification hearing.

■ Husband also argued, and the trial court held, that the amount of college expenses that husband pays for the parties' children is greater than the parties originally expected and that this represents a substantial and unanticipated change in circumstances. We first note that it cannot be said generally that husband's responsibility for the children's educational expenses was unanticipated. The marital settlement agreement, which was incorporated into the original dissolution judgment, provided that husband was to be responsible for "what it would cost to send a child to the University of Oregon at Eugene." Further, some provisions were made in the original judgment to accommodate husband's obligation. Under that judgment, husband's spousal support obligation was reduced in December 1999 from $6,000 to $4,000 per month to coincide with husband's assumption of college expenses for all three children in 1999. In addition, husband's $1,000 per month child support obligation ended in September 1999.

Although his responsibility for college expenses was not unanticipated, husband argued, and the trial court agreed, that the college expenses were substantially greater than anticipated. The trial court found that annual educational expenses were $51,500. That included $13,500 for the oldest child who was attending an in-state college and who was scheduled to graduate in 2001, and $19,000 for each of the two children attending an out-of-state university and who are scheduled to graduate in 2003.[3]

---

[3] The parties do not dispute that this is the correct amount for the children's educational expenses. However, the evidence also indicates, and the parties do not dispute, that husband actually paid about $74,000 per year for the children's expenses. The evidence regarding what the money in excess of the $51,500 was spent for is not very specific. Apparently, it was given to the children for clothing, books, spending money, and other living expenses. Wife testified that she spent about $4,800 per year on clothing for the children and gave each child about $50 per month in spending money.

We find that the evidence does establish that the college expenses are somewhat more than the parties expected. This is due in part to the fact that it was contemplated that all of the children would attend in-state colleges. The parties decided jointly that the two younger children should attend an out-of-state school. As explained by husband, the decision was based on the parties' belief that attending a school some distance away from the parties would help mitigate the effects of a fairly acrimonious dissolution. Attendance at an out-of-state school was not within the parties' contemplation at the time of the original dissolution and has resulted in more than $10,000 per year additional expense.

■ Based on all of the above circumstances, we conclude that husband established the occurrence of a substantial and unanticipated change in economic circumstances since the time of the dissolution judgment. That change justifies a modification in the award of spousal support. A modification in spousal support, however, must be limited to the amount necessary to allow the parties to adjust to the unanticipated change of circumstances. A modification may not serve as a mechanism to relitigate the original dissolution proceeding. *Maier,* 137 Or App at 19. As discussed above, our role on review in a modification proceeding is to maintain the relative positions of the parties as established in the initial judgment in light of the substantial and unanticipated change. *Bates,* 303 Or at 47.

■ Despite our conclusion that the educational expenses here are greater than the parties expected, we find that other circumstances demonstrate that the actual economic impact of these added expenses on husband is somewhat mitigated and, accordingly, the necessary modification to adjust to the changed circumstances is lessened. First, as noted above, husband's monthly obligations for spousal and child support decreased by $3,000 in 1999 at the time that all three children began to attend college. Second, the expenses for the children end at the time of their graduation, June 2001 for the older child and June 2003 for the younger children. As noted above, the spousal support award period at issue here is from December 1999 to November 2006. Consequently, the last three years of spousal support are not affected by any obligation of husband for educational expenses. Finally,

there is evidence that husband has had trust funds or savings dedicated to the children's college expenses available to him to use to pay for the educational expenses. The fund for the older child was approximately $42,000 and had been depleted at the time of the hearing. However, husband testified that, at the time of the modification hearing, he had paid only $2,000 to $3,000 in total of his personal funds for the older daughter's education expenses. The fund for the younger children was about $22,000 each and, according to husband, those funds were depleted at the end of their freshman year. Because of those funds, the amount that husband has needed to use from his monthly income to meet the children's educational expenses was significantly reduced.

As discussed above, husband's income has declined from $288,000 at the time of the original judgment to about $229,000 at the time of the modification proceeding, a reduction of approximately 20 percent. Considering that reduction, together with the increase in educational expenses, we conclude that a reduction to $2,000 as ordered by the trial court is not necessary to maintain the relative position of the parties. We conclude that, under all of the circumstances here, the relative positions of the parties would be maintained by modifying the spousal support award to $3,000 per month. Accordingly, we modify husband's spousal support obligation to $3,000 per month effective June 1, 2000 through November 1, 2006.

Remanded for entry of modified judgment awarding wife $3,000 per month spousal support effective June 1, 2000 through November 1, 2006; otherwise affirmed.